IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

---

| | |
|---|---|
| L&R FARM PARTNERSHIP and JAMES STEVEN LEWIS )<br><br>   Plaintiffs, )<br><br>v. )<br><br>CARGILL INCORPORATED, a Minnesota Corporation )<br><br><br>   Defendant. ) | No. 11-2289 |

---

## ORDER GRANTING MOTION TO STAY AND TO COMPEL ARBITRATION

---

Plaintiffs L&R Farms Partnership and James Steven Lewis ("Plaintiffs") bring this action against Defendant Cargill Incorporated ("Cargill") for fraud, violation of the Tennessee Consumer Protection Act, Tenn. Code Ann. § 47-18-104 ("TCPA"), and a declaration that the parties' contracts are void. (Compl., ECF No. 1.) On May 23, 2011, Cargill filed a Motion to Stay and Compel Arbitration. (Mot. to Stay and Compel Arb., ECF No. 7.) Plaintiffs did not respond to the Motion, but filed an Amended Complaint in which they contend that "the arbitration clause located in the [contracts] is unenforceable and of no effect." (Am. Compl., ECF No. 14.) The Amended Complaint also alleges violations of the Commodities Exchange Act ("CEA"), 7

U.S.C. § 25, and Commodities Futures Trading Commission Regulations. (See Am. Compl.) On August 15, 2011, Cargill filed a Renewed Motion to Stay and Compel Arbitration. [1] (Renewed Mot., ECF No. 15.)

On October 12, 2011, the Court entered an Order requiring Plaintiffs to show cause why Cargill's Renewed Motion should not be granted. (Order to Show Cause, ECF No. 18.) On October 13, 2011, Plaintiffs filed a response stating that the Court had set October 18, 2011 as the deadline for their response to Cargill's Renewed Motion, that they had not therefore violated any deadlines, and that Cargill's Renewed Motion should not be granted without consideration of their currently unfiled but still timely response. (Show Cause Resp., ECF No. 19.)

On November 16, 2011, Plaintiffs filed a Motion to Compel Discovery Responses. (ECF No. 22.) Cargill filed a response on December 2, 2011. (ECF No. 24.) The Court referred Plaintiffs' Motion to Magistrate Diane K. Vescovo, who denied it. (Order of Reference, ECF No. 23; Vescovo Order, ECF No. 25.) Plaintiffs appealed Magistrate Judge Vescovo's Order on January 13, 2012. (ECF No. 27.) Cargill filed a response on January 24, 2012. (ECF No. 28.) The Court affirmed Magistrate Judge Vescovo's

---

[1] Although Cargill maintains that Plaintiffs' Amended Complaint is improper and should be stricken, the Court relied on the Amended Complaint in its March 5, 2012 Order and it has therefore been accepted within the meaning of Federal Rule of Civil Procedure 15.

Order and denied Plaintiffs' Motion to Compel on March 5, 2012. (March 5 Order, ECF No. 29.)

In a telephone conference on March 8, 2012, the Court indicated that Cargill's Renewed Motion to Stay and to Compel Arbitration was still pending. (ECF No. 32.) Plaintiffs filed a Response in opposition to Cargill's Renewed Motion to Stay and Compel Arbitration on March 20, 2012. (Resp., ECF No. 33.) Cargill filed a Reply Memorandum in further support of its Renewed Motion on March 22, 2012. (Reply, ECF No. 34.) Also before the Court is Cargill's March 19, 2013 Motion for Status Conference, stating that there has been no further activity in the case subsequent to the filing of its reply. (ECF No. 36.)

Cargill's Renewed Motion to Stay and to Compel Arbitration is ripe. For the following reasons, Cargill's Motion is GRANTED.

## I.   Background

The factual background of this case is recited in the Court's March 5 Order.

## II.   Jurisdiction

The Court has subject matter jurisdiction under 28 U.S.C. § 1331 because Plaintiffs allege violations of the CEA. To the extent that any state law claims are at issue, the Court has supplemental jurisdiction over Plaintiffs' related state law

claims. <u>United Mine Workers of Am. v. Gibbs</u>, 383 U.S. 715, 727 (1966).

### III. Standard of Review

Under the Federal Arbitration Act, 9 U.S.C. §§ 1, et seq. ("FAA"), "a district court must make a number of threshold determinations before compelling arbitration." <u>Fazio v. Lehman Bros., Inc.</u>, 340 F.3d 386, 392 (6th Cir. 2003). The court has four tasks:

> [F]irst, it must determine whether the parties agreed to arbitrate; second, it must determine the scope of that agreement; third, if federal statutory claims are asserted, it must consider whether Congress intended those claims to be nonarbitrable; and fourth, if the court concludes that some, but not all, of the claims in the action are subject to arbitration, it must determine whether to stay the remainder of the proceedings pending arbitration.

<u>Stout v. J.D. Byrider</u>, 228 F.3d 709, 714 (6th Cir. 2000).

Generally, proceedings are stayed after a proper motion to compel arbitration is filed. 9 U.S.C. § 3; <u>see also</u> <u>Simula, Inc. v. Autliv, Inc.</u>, 175 F.3d 716, 726 (9th Cir. 1999); <u>Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Coors</u>, 357 F.Supp.2d 1277, 1281 (D. Colo. 2004). Courts may consider the limited issue of arbitrability. <u>Prima Paint Corp. v. Flood & Conklin Mfg. Co.</u>, 388 U.S. 395, 404 (1967). A dispute about the validity of an arbitration provision, and not a contract as a whole, is a matter for the court, not an arbitrator. <u>Fazio</u>, 340 F.3d at 393; <u>Express Scripts, Inc. v. Aegon Direct Mtkg. Servs,</u>

4

Inc., 516 F.3d 695, 699-701 (8th Cir. 2008); accord Nagrampa v. Mailcoups, 469 F.3d 1257, 1271 (9th Cir. 2006).  When parties challenge the validity of an arbitration provision, the Court's role is limited to "determin[ing] only whether a written arbitration agreement exists, and if it does, enforce it in accordance with its terms." Simula, 175 F.3d at 720.

Under the FAA, "a written agreement to arbitrate disputes arising out of a contract involving interstate commerce 'shall be valid, irrevocable, and enforceable save upon such grounds as exist at law or in equity for the revocation of any contract.'" Great Earth Cos. v. Simons, 288 F.3d 878, 889 (6th Cir. 2002) (quoting 9 U.S.C. § 2).  "'[C]ourts are to examine the language of the contract in light of the strong federal policy in favor of arbitration.  Likewise, any ambiguities in the contract or doubts as to the parties' intentions should be resolved in favor of arbitration.'"  Id. (quoting Stout, 228 F.3d at 714).  An arbitration agreement can be invalidated for the same reasons for which any contract can be invalidated.  Fazio, 340 F.3d at 939.  The FAA preempts state law specific to arbitration but not general state contract law.  Id.  State law "governs 'generally applicable contract defenses [to an arbitration clause], such as fraud, duress, or unconscionability.'"  Id.  (quoting Doctor's Assoc. v. Casarotto, 517 U.S. 681, 687 (1996)).

When a written agreement to arbitrate exists and one party refuses to arbitrate, the other party may petition the district court to order the refusing party to comply with the terms of the agreement.   9 U.S.C. § 4.   "If the district court is satisfied that the agreement to arbitrate is not 'in issue,' it must compel arbitration.   If the validity of the agreement to arbitrate is 'in issue,' the court must proceed to a trial to resolve the question."   Great Earth, 288 F.3d at 889; 9 U.S.C. § 4.   To show that the validity of an agreement is "in issue" and therefore that a trial is required, "the party opposing arbitration must show a genuine issue of material fact as to the validity of the agreement to arbitrate."   Id.   "The required showing mirrors that required to withstand summary judgment in a civil suit."   Id.

The court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."   Fed. R. Civ. P. 56(a).   The moving party can meet this burden by pointing out to the court that the non-moving party, having had sufficient opportunity for discovery, has no evidence to support an essential element of his case.   See Fed. R. Civ. P. 56(c)(1); Asbury v. Teodosio, 412 F. Appx. 786, 791 (6th Cir. 2011) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986)).

When confronted with a properly supported motion for summary judgment, the non-moving party must set forth specific facts showing that there is a genuine dispute for trial.  See Fed. R. Civ. P. 56(c).  A genuine dispute for trial exists if the evidence is such that a reasonable jury could return a verdict for the non-moving party.  See Wasek v. Arrow Energy Servs., 682 F.3d 463, 467 (6th Cir. 2012) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).  The non-moving party must "'do more than simply show that there is some metaphysical doubt as to the material facts.'"  Phelps v. State Farm Mut. Auto. Ins. Co., 680 F.3d 725, 735 (6th Cir. 2012) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986)).  A party may not oppose a properly supported summary judgment motion by mere reliance on the pleadings.  See Beckett v. Ford, 384 Fed. Appx. 435, 443 (6th Cir. 2010) (citing Celotex Corp., 477 U.S. at 324).  Instead, the non-moving party "must adduce concrete evidence on which a reasonable juror could return a verdict in his favor."  Stalbosky v. Belew, 205 F.3d 890, 895 (6th Cir. 2000) (citations omitted); see Fed. R. Civ. P. 56(c)(1).  The court does not have the duty to search the record for such evidence.  See Fed. R. Civ. P. 56(c)(3); InterRoyal Corp. v. Sponseller, 889 F.2d 108, 111 (6th Cir. 1989).  The non-moving party has the duty to point out specific evidence in the record that would be sufficient to justify a

jury decision in his favor.   <u>See</u> Fed. R. Civ. P. 56(c)(1);
<u>InterRoyal Corp.</u>, 889 F.2d at 111.

## IV.  Analysis

In its March 5 Order, the Court decided that the parties had
entered into a written agreement to arbitrate and that the broad
scope of the agreement required an arbitrator to decide both
disputes about the performance of the contracts and disputes
about the formation of the contracts.  (March 5 Order 14); <u>see</u>
<u>Stout</u>, 228 F.3d at 714.  The Plaintiffs' Amended Complaint
raises a federal statutory challenge to the arbitration
agreements under the CEA.  The Court decided that the
Plaintiffs' CEA challenge was a "separate and valid challenge to
arbitration, which the Court must address" and not a challenge
to the contract as a whole.  (March 5 Order 14.)

Specifically, the Plaintiffs allege that "the arbitration
clause located in the No Basis Contracts is unenforceable and of
no effect" because "Cargill was required to provide the required
pre-dispute arbitration disclosures pursuant to 17 C.F.R. §
166.5."  (Am. Compl. ¶¶ 27, 25.)  If a contract is subject to
the requirements of the CEA, compliance with 17 C.F.R. § 166.5
is a question to be decided by the court and not an arbitrator
because it concerns the validity of the arbitration agreement
itself.  (<u>See</u> March 5 Order 14); <u>Fazio</u>, 340 F.3d at 393.  The
Court concluded that, to determine whether Cargill was required

to make pre-dispute arbitration disclosures, the Plaintiffs would need to show that the Grain Contracts were options or futures contracts subject to the requirements of 17 C.F.R. § 166.5. (March 5 Order 15.)

The only question before the Court is whether the arbitration clauses in the contracts between the Plaintiffs and Cargill are enforceable. (See March 5 Order, ECF No. 29.) Each Grain Contract includes an arbitration provision that states:

> The parties agree that the sole forum for the resolution of all disagreements or disputes between the parties arising under any grain contract between Buyer and Seller or relating to the formation of any grain contract between Buyer and Seller shall be arbitration proceedings before [the National Grain and Feed Association ("NFGA")] pursuant to NFGA Arbitration Rules. The decision and award determined by such arbitration shall be final and binding upon both parties and judgment upon the award may be entered in any court having jurisdiction thereof.

(Grain Contracts, ECF Nos. 14-1, 14-2, and 14-3.) Because the arbitration agreements are so broadly stated, if they are enforceable, any remaining conflicts between the parties must be resolved by the NFGA arbitration panel.

The Plaintiffs contend that the arbitration clauses in the Grain Contracts are unenforceable because Cargill did not provide the Plaintiffs with the pre-dispute arbitration disclosures required by 17 C.F.R. § 166.5. (Am. Compl. ¶ 25.) Cargill contends that its contracts are not subject to the requirements of § 166.5 because that section implements the CEA

and the contracts are exempt from coverage by the CEA. (Renewed Mot. 9.) Cargill argues that the Grain Contracts are cash forward contracts, which are explicitly exempt from the requirements of the CEA. (Id.) The Plaintiffs argue that the contracts are in substance futures contracts because of their Focal Point Addenda, or option contracts because of their Minimum Price Addenda. (Resp. 6-8.) They contend that options and futures contracts for grain are not exempt from the requirements of the CEA and must comply with § 166.5. (Id. 4-6.)

The Court need not decide whether the Grain Contracts are in fact options or futures contracts. The nature of the contracts as a whole is a question that is outside the purview of the Court if the agreement to arbitrate is valid. The Court will decide only whether the Plaintiffs have submitted sufficient evidence to the Court to require the Court to hold a trial about the validity of the arbitration agreements. Whether the Plaintiffs have satisfied the standard of review on the Motion to Compel Arbitration has no bearing on what an NFGA panel may decide applying its different procedural and substantive rules.

**A. Cargill's Burden**

**1. Option Contracts**

The CEA defines an option as "an agreement, contract, or transaction that is of the character of, or is commonly known to the trade as, an 'option,' 'privilege,' 'indemnity,' [etc.]." 7 U.S.C. §1a(26). "[A]n option means the contract whereby the creator (or writer) of the option grants the purchaser 'the right, for a specified period of time, to either buy or sell the subject of the option at a predetermined price.'" CFTC v. White Pine Trust Corp., 574 F.3d 1219, 1226 (9th Cir. 2009) (quoting 1 Derivatives Regulation § 1.02[10]).

> Unlike futures and cash forwards which create mutually binding obligations, the option holder incurs no obligation, but rather pays a fee or other consideration for obtaining the enforceable obligation of the option giver to sell or buy upon demand. Thus, the total risk assumed in purchasing an option is the loss of fee. A commodity option confers on its holder the right, but not the obligation, to buy (a "call option") or to sell (a "put option") a specific amount of a commodity at a fixed price by a date certain.

Salomon Forex, Inc. v. Tauber, 8 F.3d 966, 971 (9th Cir. 1993).

Cargill asserts that the Plaintiffs cannot prove that the Minimum Price Addenda convert the Grain Contracts into option contracts because "Plaintiffs cannot accept or reject the offer," and "[u]nlike...an option contract, failure to deliver under the Grain Contracts would result in a breach of contract." (Reply 8) (internal quotations

omitted.)   To support its contention, Cargill submits the Grain Contracts and the Minimum Price Addenda.

Cargill has made the required showing to shift the burden to the Plaintiffs to prove that there is a genuine dispute of material fact about whether the Grain Contracts are option contracts within the meaning of the CEA. The Court has previously decided that:

> The Minimum Price Addendum, on its face, does not give L&R Farms the right to withhold sale if the price does not rise. (Minimum Price and Combinations Grain Contract Addendum 1, ECF No. 14-2.) The Addendum does not give a party the right to buy or sell a commodity; it uses the value of the option as part of a pricing mechanism. (Id.)

(March 5 Order 18.)   The Court is obligated to begin its analysis of the validity and enforceability of a contract by considering the language of that contract.   See Stout, 228 F.3d at 714.   In the context of an arbitration agreement, the Court must construe any ambiguities in the contract or doubts as to the parties' intentions in favor of arbitration.   Id.   In this case, the contract language is unambiguous.   On its face, the Minimum Price Addendum establishes a minimum price; it does not affect the parties' obligation to buy and sell to one another. (Minimum Price Addenda.)

## 2. Futures Contracts

12

Futures contracts do not include "any sale of any cash commodity for deferred shipment or delivery." 17 C.F.R. 1.3(o); 7 U.S.C. § 1(a)(19). The Sixth Circuit has adopted two tests to determine whether a contract is a futures contract.

In Andersons, Inc. v. Horton Farms, Inc., 166 F.3d 308 (6th Cir. 1998), the parties entered into nine contracts for the delivery of corn. A dispute arose over fees, and the defendants refused to deliver, causing the plaintiffs to move the court to compel arbitration. Id. at 314. The Sixth Circuit determined that the arbitration clauses in the contracts were not enforceable as written if the contracts were subject to the CEA. Id. at 317. The court concluded that under the CEA "'any sale of any cash commodity for deferred shipment or delivery'" is not a futures contract. Id. at 318 (quoting 7 U.S.C. § 1a(11)). Contracts that "contemplate physical transfer of the commodity" and "reduce the risk of price fluctuations . . . are not subject to CFTC regulations because those regulations are intended to govern only speculative markets; they are not meant to cover transactions wherein the commodity in question has an 'inherent value' to the transacting parties." Id. When "determining whether a particular commodities contract falls within the cash forward exemption [to the CEA], courts must focus on whether there is a legitimate expectation that physical delivery of the

13

actual community by the seller to the original contracting buyer will occur in the future." Id.

More recently, the Sixth Circuit adopted a different futures contract test in CFTC v. Erskine. 512 F.3d 309, 322, 324 (6th Cir. 2008). The Erskine court identified six elements of a futures contract:

1) The 'contract' is standardized so that it can be traded on an exchange, and is
2) a fungible agreement to buy or sell
3) a stated unit quantity of
4) a stated commodity
5) at a stated unit price
6) at or before a stated unit time.

Id. at 324. A forward contract, by comparison, is:

1) neither standardized nor traded on an exchange, and is
2) an individual agreement to buy or sell
3) some agreed-upon quantity of
4) some commodity
5) at some agreed-upon price
6) at some agreed-upon time in the future.

Id.

The Sixth Circuit has not explicitly held that the test in Andersons was overruled by Erskine. Under the Rules of the Sixth Circuit, both Andersons and Erskine are binding current law and should be distinguished so that they do not conflict. See 6 Cir. R. 32.1(b) ("Published panel opinions are binding on later panels. A published opinion is overruled only by the court en banc.") The court in Erskine specifically distinguished Andersons, and the analysis in Erskine provides guidance in the present case.

14

In Erskine, the CFTC sued a company that traded in foreign currency in violation of the CEA.  512 F.3d at 310.  The company traded units of currency, and "the trading was in the actual currency, not in any paper representing a fungible unit batch of currency to be bought or sold at a later date."  Id. at 311. Unlike Andersons, there was no tangible good, such as soy, at issue because the contract involved only a currency swap.  The Erskine court held that "Andersons does not provide controlling precedent," because "Andersons is distinguishable – on the distinction between tangible and intangible commodities, inasmuch as there is never 'delivery' of intangible or financial commodities." Id. at 322.  A test that considers whether a good is intended to be delivered is not relevant in determining whether there is a futures transaction in circumstances like those in Erskine.

Under the facts presented in this case, Andersons is the controlling precedent.  The Grain Contracts evidence an agreement for the sale and purchase of soybeans, a tangible commodity.  (Grain Contracts.)

Cargill asserts that the Plaintiffs cannot prove that the Focal Point Addenda make the Grain Contracts into futures contracts because delivery of the soybeans was expected within the meaning of Andersons.  (Renewed Mot. 9.)  It contends that:

> the parties were in the business of providing and obtaining
> the commodity, the parties had the ability to make and take
> delivery of the physical commodity, Cargill relied on the
> actual delivery of the commodity to carry out its business,
> delivery routinely occurred between the parties in past
> dealings, and Plaintiffs received a cash payment only upon
> delivery of the actual commodity.

(Id.); see Andersons, 166 F.3d at 320.  Cargill contends that "[i]t is undisputed that the parties expected an actual physical delivery of soybeans."  (Id.)  In support of this contention, Cargill submits the Grain Contracts and the Focal Point Addenda.

Cargill has made the required showing to shift the burden to the Plaintiffs to establish that there is a genuine dispute of material fact about whether the Grain Contracts are futures contracts within the meaning of the CEA.  The language of the Grain Contracts is unambiguous, and the Court has an obligation to interpret it as written.  See Stout, 228 F.3d at 714.  The Grain Contracts state that the "Seller confirms its sale and obligation to deliver the listed commodity to Buyer under the [listed] terms and conditions."  (Grain Contracts.)  The Focal Point Addenda state that the contracts are "physical delivery commodity contract[s].  All commodity sold hereunder by Seller shall be delivered during the delivery period stated in the Contract[s]."  (Focal Point Addenda.)  The Addenda also state that "entering this transaction does not result in [Plaintiffs] opening a futures/options account or having a futures/options position."  (Id.)  The burden is on the Plaintiffs to adduce

16

specific evidence that would allow the Court to conclude that, contrary to the terms of the Grain Contracts, physical delivery was not actually anticipated within the meaning of Andersons, and that the contracts are therefore futures contracts subject to the CEA.

### B. Plaintiffs' Burden

Plaintiffs are obligated to point to specific facts in the record that demonstrate a genuine dispute about whether the Grain Contracts are options or futures within the meaning of the CEA. The Plaintiffs may not rely exclusively on their pleadings, and the Court gives no deference to their conclusory legal statements about the nature of the agreements.

The Plaintiffs' Response to Cargill's Motion to Compel Arbitration makes numerous conclusory assertions that the "contracts were treated as futures and options, rather than cash forward contracts by all parties involved." (Resp. 6.) Plaintiffs state, without reference to supporting documentation, that "[t]he contracts themselves were traded, not the underlying commodity." (Id. 5.)

The Response cites two documents in the record to support the claim that the Grain Contracts are futures and options, the Declaration of Steve Lewis, (Lewis Decl., ECF No. 33-2), and the Declaration of Phillip Lee Hageman,

17

(Hageman Decl., ECF No. 33-1). The copy of Lewis' Declaration submitted to the Court has not been sworn and is not competent evidence on which the Court may rely to decide Cargill's Motion. (See Lewis Decl.) Hageman is an associated person with the CFTC and a former NGFA arbitrator. (Hageman Decl. ¶¶ 4-5.) His Declaration states his opinions about the nature of the Grain Contracts based on a review of the documents and his purported expertise. (See generally Id.)

The Plaintiffs cite paragraphs 7 and 8 of Hageman's Declaration to support their claims about the Grain Contracts. (Resp. 7.) Relying on Paragraph 7, Plaintiffs claim that, "regardless of what the contracts were titled, [they] were not treated as cash forward contracts." (Id.) In paragraph 7, Hageman states that the contracts "were not handled by Cargill as typical cash forward contracts." (Hageman Decl. ¶ 7.) He asserts that Cargill "offered and permitted [Plaintiffs] to enter into multiple option and futures transactions that went far beyond the mere pricing of grain." (Id.) Hageman goes on to state that the Grain Contracts "were in substance equivalent to exchange-traded options or futures contracts and, as such, were in economic reality agricultural trade options or futures positions that are regulated by the [CFTC]." (Id.) Whether the

18

Grain Contracts were cash forward, options, or futures is a question of law that is in the exclusive purview of the Court to decide. Hageman's statements are legal conclusions, not factual support, and they are not useful to the Court in determining whether the Plaintiffs have demonstrated a genuine issue of material fact about the nature of the Grain Contracts.

The Plaintiffs rely on paragraph 8 of Hageman's Declaration to support their claim that the Grain Contracts "are not typical of unregulated cash forward contracts," because "the settlement totals Cargill sets forth consist primarily of 'roll service charges, contract cancellation charges, options price charges, deferred future price differences and other contract service charges.'" (Resp. 7 (quoting Hageman Decl. ¶ 8).) Although this statement is factual, it does not support the Plaintiffs' argument that there is a genuine dispute of material fact about the nature of the Grain Contracts. The Court concluded in its March 5 Order that a "service fee has no bearing on whether a party has signed an option or a futures contract." (March 5 Order 20.) Indeed, the cash forward contracts in Andersons, the controlling precedent, entailed service fees, notably "approximately $30,000 in fees incurred by

19

[the defendant] when it utilized the flex/convertible features of the contracts." 166 F.3d at 312 n.7.

In its March 5 Order, the Court concluded that, to demonstrate that the Grain Contracts were options, Plaintiffs would need to produce "evidence that there was a right not to buy or to sell the grain." (March 5 Order 18.)  As discussed above, to demonstrate that the Grain Contracts were futures under the <u>Andersons</u> test, the Plaintiffs would need to produce sufficient evidence that physical delivery was not actually anticipated under the contracts to show a genuine dispute of material fact.  The Plaintiffs have failed to identify any facts in the record that would allow the Court to conclude that a genuine dispute of material fact exists about whether the Grain Contracts are either options or futures contracts within the meaning of the CEA.

The Plaintiffs have failed to meet their burden.  Cargill is entitled to the equivalent of summary judgment on Plaintiffs' claim that the arbitration agreements are invalid.  Because Plaintiffs' contention that Cargill's arbitration agreements fail to comply with 17 C.F.R. § 166.5 is the only question properly before the Court, arbitration of all remaining claims is now warranted.

**V.   Conclusion**

For the foregoing reasons, Cargill's Renewed Motion to Stay and Compel Arbitration is GRANTED.

So ordered this 31st day of July, 2013.

s/ Samuel H. Mays, Jr._____
SAMUEL H. MAYS, JR.
UNITED STATES DISTRICT JUDGE